UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIS DITTENHAFER,

    Plaintiff,

    v.

CITIGROUP,

    Defendant.
_____/

No. C 10-1779 PJH

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Defendant's motion for an order dismissing the above-entitled action, or, in the alternative, to compel arbitration, came on for hearing before this court on July 21, 2010. Plaintiff Chris Dittenhafer appeared in propria persona, and defendant Citigroup a/k/a Citibank ("Citibank") appeared by its counsel Joshua J. Cliffe. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

Plaintiff was employed by Citibank from June 27, 2005, through October 2, 2008, when he was terminated. At the time he was hired, he received a copy of Citibank's Employee Handbook. He also received a copy on one or more other occasions, including in February 2006, when he signed an acknowledgment of receipt in which he also agreed to comply with all company policies. He further acknowledged that he understood that the Handbook "contains a policy that requires me to submit employment-related disputes to binding arbitration" ("the Arbitration Policy") and that he had read that provision carefully.

The Arbitration Policy states that arbitration is

> the required and exclusive forum for resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and the Company or its current and former parents, subsidiaries, and affiliates and its and their current and former officers, directors, employees, and agents (and that aren't resolved by the internal Dispute Resolution Procedure) including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabiliation Act of 1973, the Americans With Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employment Retirement Income Security Act of 1974, and all amendments thereto and any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

The only types of claims not covered by the Arbitration Policy are claims brought by a former employee regarding Workers' Compensation or unemployment compensation benefits, and claims brought on a class or collective basis.

On February 15, 2009, plaintiff wrote to Citibank to demand arbitration regarding the termination of his employment in October 2008.  In June 2009, the parties submitted the matter to the American Arbitration Association ("AAA") under the Arbitration Policy.  The parties subsequently selected an arbitrator and conducted extensive discovery, and are close to setting the arbitration hearing.

Meanwhile, on August 21, 2009, plaintiff filed an administrative complaint with the EEOC.  He received a right-to-sue letter on January 26, 2010, and filed the present case on April 26, 2010.  Plaintiff alleges discrimination of the basis of sex and disability, termination of employment, failure to make reasonable accommodation, and "ongoing harassment during and after termination of employment."  He asserts that the discrimination and harassment occurred "from 2007 to present."

In the "basic facts" section of the complaint, plaintiff alleges as follows:

> Repeated request for reasonable accommodation for disability ignored and refused during employment.  Ongoing incidents of sexual harassment dating back to 2007.  Termination for which no evidence of malfese [sic] was presented to warrant ignoring standard company corrective action policies.  An intentional refusal of COBRA benefits forcing me to utilize resources

which caused extreme distress and additionally impacted my credibility. A Dispute Resolution Policy that was to insure fair and equitable treatment to all employees with company responses that were fabricated and biased. A letter from Elizabeth Hook, Vice Pres Legal Counsel, Citigroup to Lesley Radcliffe, Benefits Advisor, Dept of Labor disclosing confidential and inaccurate info regarding my denial of COBRA benefits and my credibility.

Citibank now seeks an order dismissing the complaint on the basis that plaintiff and Citibank entered into an enforceable agreement to arbitrate claims and disputes arising out of his employment. In the alternative, Citibank seeks an order compelling arbitration.

**DISCUSSION**

A.    Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Under the FAA, any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and dismiss or stay the proceedings. 9 U.S.C. §§ 3, 4. The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

The role of the federal courts in these circumstances is limited to determining whether the arbitration clause at issue is valid and enforceable under § 2 of the FAA. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). That is, the court must determine whether there is an agreement to arbitrate between the parties, and whether the agreement covers the dispute. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83-84 (2002). Any doubts or ambiguities must be resolved in favor of and not against arbitration. Moses H. Cone, 460 U.S. at 24-25.

3

However, despite the "liberal federal policy favoring arbitration agreements," Green Tree Fin. Corp.- Alabama v. Randolph, 531 U.S. 79, 81 (2000), state law is not entirely displaced from federal arbitration analysis.  Under § 2, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).  Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996).

B.   Defendant's Motion

Citibank argues that the parties expressly agreed to arbitrate, and that the claims asserted by plaintiff are covered by the arbitration agreement.  Citibank also asserts that the Arbitration Agreement satisfies the requirements established by the California Supreme Court in Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 90 (2000), as it (a) requires a neutral arbitrator; (b) provides for more than adequate discovery; (c) requires a written arbitration award; (d) provides for a wide range of remedies (including compensatory and punitive damages and injunctive relief, to the extent permitted by applicable law); and (e) provides that the Company shall bear the costs of arbitration.

In opposition, plaintiff asserts that signing the Arbitration Agreement constituted a loss of the right to a jury trial for the Title VII violations, and that Citibank has failed to produce evidence showing that he knowingly waived his right to a jury trial.  He claims that when he initiated the arbitration proceedings, "it was based on an unconscionable adhesion contract signed in order to gain and maintain employment."  He asserts that he has conducted little discovery because he has been "unable to obtain the services of an attorney due to the Arbitration Agreement."

Plaintiff claims that at the time of his hiring, Citibank took more than a month to review his paperwork, and that he was called back several times because improper documents had been submitted.  He asserts that he was given numerous documents to review and sign, but that he was "never provided an explanation by any employee of

Citibank," and also contends that "the paperwork was not copied and given to [him]."

With regard to the Arbitration Policy, he asserts that "[t]here was no emphasis placed on the contents [of the Employee Handbook] nor was there any mechanism for determining proper review and receipt of the Handbook." He suggests that when he requested arbitration, he thought he was simply seeking to initiate Citibank's internal Dispute Resolution process and claims that he was never advised that executing a request to arbitrate was anything less than part of the internal Dispute Resolution Policy.

Plaintiff asserts that "[t]he entire process is controlled by [Citibank] under its guidelines and provisions," and reiterates that he was never advised that he would be giving up his right to a jury trial. He also contends that his original arbitration request was for a panel of three arbitrators, which he asserts was summarily and unfairly denied (although the court notes that the Arbitration Policy provides for a single arbitrator "unless both parties request that a panel of three (3) arbitrators be appointed"). He claims that the entire process is "unbalanced" and that it is "clear" that AAA favors Citibank, as the two have an established working relationship.

Plaintiff argues that the arbitration provision is both procedurally and substantively unconscionable, and is therefore unenforceable. He contends that it is procedurally unconscionable under Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002), because it is presented on a take-it-or-leave it basis, and is a prerequisite for employment.

Plaintiff asserts that the arbitration provision is substantively unconscionable because the terms are so one-sided – in particular because it requires arbitration for all contractual or tort claims of discrimination or harassment, but excludes claims involving workers' compensation or unemployment compensation benefits as well as class claims. He contends that the arbitration provision is also substantively unconscionable because it does not include a notice that agreeing to arbitration means waiving the right to a jury trial. He argues that compelling an employee to waive this fundamental right is so one-sided as to shock the conscience.

In reply, Citibank contends that plaintiff admits that he signed numerous documents

acknowledging his agreement to be bound by Citibank's employment policies, including its Arbitration Policy (which he also acknowledged having read "carefully").

Citibank contends that plaintiff's claims are covered by the arbitration provision, and notes that Arbitration Policy "makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights." Citibank asserts that this language clearly obligates plaintiff to arbitrate his Title VII and ADA claims.

Citibank argues that it is undisputed that plaintiff availed himself of the arbitration process by demanding arbitration of his claims and participating in that process for the past year. Citibank argues that plaintiff should not be permitted now, on the eve of the arbitration hearing, to repudiate his express agreement to arbitrate and proceed in federal court.

Citibank also contends that plaintiff's argument that the arbitration provision is unconscionable and therefore unenforceable is without merit. Citibank notes that the California Supreme Court in Armendariz held that statutory employment discrimination claims are arbitrable "if the arbitration process permits an employee to vindicate his or her statutory rights." Id., 24 Cal. 4th at 90.

Citibank reiterates that the Arbitration Policy passes muster under Armendariz because it provides for a neutral arbitrator, provides the opportunity for adequate discovery, provides for a written decision that will permit a limited form of judicial review, does not limit statutorily available remedies, and provides that the employee will not be required to pay unreasonable costs as a condition of gaining access to the arbitral forum.

Citibank contends that the Arbitration Policy is not one-sided, as it does not require only employees to arbitrate. Citibank notes that the arbitration provision at issue in Circuit City lacked mutuality, and also restricted the damages available to employees by limiting the amount of back pay, front pay, and punitive damages – not the case here.

Finally, Citibank reiterates that the entire case should be dismissed with prejudice, because all plaintiff's claims are subject to arbitration pursuant to the Arbitration Agreement.

The court finds that the motion to compel arbitration must be GRANTED. The Arbitration Policy incorporates an agreement to arbitrate statutory claims such as the claims asserted by plaintiff under Title VII and the ADA.

Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable. Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir.2007). California courts apply a "sliding scale" analysis in making this determination. "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Pokorny v. Quixtar, Inc., 601 F.3d 987, 996 (9th Cir. 2010) (citing Armendariz, 24 Cal. 4th at 114). Thus, although both procedural and substantive unconscionability must be present for the contract to be declared unenforceable, they need not be present to the same degree. Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406 (2003).

In assessing procedural unconscionability, California law focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate. See Davis, 485 F.3d at 1073. An agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation." Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (2002). Thus, a contract is procedurally unconscionable under California law if it is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Ting v. AT & T, 319 F.3d 1126, 1148 (9th Cir. 2003).

Here, the agreement is contained in what is plainly a contract of adhesion, which was presented on a take-it-or leave it basis as a condition of employment. However, that alone is not sufficient to render the entire provision unconscionable. As noted above, some degree of procedural unconscionability is allowed if there is minimal substantive unconscionability.

7

"Substantive unconscionability addresses the fairness of the term in dispute." Szetela, 97 Cal. App. 4th at 1100. The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party. Harper, 113 Cal. App. 4th at 1407. Thus, mutuality is the "paramount" consideration when assessing substantive unconscionability. Pokorny, 601 F.3d at 998; Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 657 (2004). Agreements to arbitrate must contain at least "a modicum of bilaterality" to avoid unconscionability. Armendariz, 24 Cal. 4th at 119.

Here, the agreement satisfies the requirements of Armendariz, and plaintiff has not established that it is otherwise unconscionable. The exclusion of workers' compensation and unemployment claims from the claims that must be submitted to arbitration does not make the agreement one-sided, as those are claims that normally must be adjudicated via a state administrative proceeding with specific requirements. Nor does the provision excluding class claims from arbitration make the agreement one-sided.

It is true that the agreement does not specifically mention claims that Citibank might have against an employee, but on the other hand it does not specifically exclude them. Because the Arbitration Policy is set forth in the Employee Handbook, the focus of the Policy is on advising employees that any disputes they might have with the Company must be submitted to arbitration ("all employment disputes based on legally protected rights"). However, this phrase can reasonably be construed as including disputes that Citibank might have with an employee.

In Armendariz, the arbitration agreement at issue required arbitration of all employee claims regarding termination. The court noted that while it did not expressly authorize litigation (as opposed to arbitration) of the employer's claims against the employee, "such was the clear implication of the agreement. Obviously, the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." Id. at 120. The court added,

> This is not to say that an arbitration clause must mandate the arbitration of all claims between employer and employee in order to avoid invalidation on grounds of unconscionability. Indeed, as the employer points out, the

8

> present arbitration agreement does not require arbitration of all conceivable claims that an employee might have against an employer, only wrongful termination claims.  But an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.  The arbitration agreement in this case lacks mutuality in this sense because it requires the arbitration of employee-but not employer-claims arising out of a wrongful termination. An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee.

Id.

Here, the Arbitration Policy does not clearly imply that Citibank is free to litigate (as opposed to being compelled to arbitrate) any claims it might have against its employees. Moreover, in Armendariz, the court found numerous other features in the agreement that made it one-sided, apart from the limitation on the types of claims, and it was the combination of features, resulting in a lack of mutuality, that the court found most troubling.

In this case, however, apart from the fact that the agreement is silent as to whether Citibank is obligated to arbitrate any claims that it might have against its employees, the features that California courts (including Armendariz) have found to create substantive unconscionability (restrictions on discovery, requirement that the employee pay the arbitrator's fees, limitation on remedies) are not present.

### CONCLUSION

In accordance with the foregoing, the court finds that the motion to compel arbitration must be GRANTED, and that the action must be DISMISSED.

**IT IS SO ORDERED.**

Dated: August 2, 2010

PHYLLIS J. HAMILTON
United States District Judge